STATE, JAMES M. BOARD, GEORGIANA L. HECKSHER AND MICHAEL SHANNON, PROSECUTORS, v. CITY OF HOBO-KEN.

STATE, JULIA REUBELT, TRUSTEE, AND JULIA REUBELT AND GERARD H. COSTER, TRUSTEE, AND GERARD H. COSTER, PROSECUTORS, v. CITY OF HOBOKEN.

1. Where the report of assessment commissioners for street improvements was taken from the file of the city council and returned to the commissioners for amendments, upon objections made by property owners, council cannot recall and confirm it against the protest of the commissioners without amendment, and without notice.

2. The contractor under proposals must be held to his bid—not allowed to underbid others and afterwards receive more. The excess will be an illegal charge against the land owners.

3. Where the assessment is set aside, new commissioners will be appointed by the court, under the charter.

On *certiorari*.

Argued at June Term, 1873, before Justices BEDLE, WOOD-HULL and SCUDDER.

For the plaintiffs, *J. Dixon*.

For the defendants, *J. C. Besson*.

The facts returned in these writs appear in the opinion of the court.

The opinion of the court was delivered by

SCUDDER, J.   Upon petition of property owners on Ferry street, between Jefferson street and the western boundary of the city of Hoboken, to have the said portion of Ferry street filled in, graded, curbed, guttered, the sidewalk flagged and the proper cross bridging laid at the several intersections, proceedings were had by the council of the city, under the charter. *Acts*, 1855, *tit.* 6, § 52, *p.* 475, &c.

The formal objections relating to the advertisement of notice, passing the ordinance, publication of same, and advertisement of contract are not sustained by the proofs in the case, and the return to the writ shows that these formalities were observed. The only irregularity found in the case, is in the form of assessment. The commissioners, by their report dated December 24th, 1870, ascertained the cost and expense of the improvements on Ferry street, amounting to the sum of forty-one thousand three hundred and forty-five dollars and thirty-four cents, ($41,345.34,) according to the estimated quantities given by the city surveyor, and incidental expenses to the amount of fifteen hundred dollars, ($1500). Annexed to this report was a schedule, containing the blocks, the lots, and number of each of the separate parcels or lots of land shown on the map, the name of the owner or owners, and the amount assessed to each separate parcel or lot. At a stated meeting of the city council January 5th, 1871, this assessment map and report were presented, read, and on motion received, and the clerk was directed to advertise the filing of the same according to law. At the meeting of the council on January 24th, 1871, objections to the confirmation of the assessment for Ferry street improvements were presented and referred to a committee. These objections were made by many of the property owners, mainly because the amounts assessed were excessive and unjust, and there were mistakes in names and owners of lots. March 14th, 1871, the committee of council, to whom these objections to the confirmation of assessment were referred, reported in favor of returning the assessment map back to the commissioners of assessments, for alteration in several particulars, as to the names of persons, division of lots, and assessments on each. They also recommended that Levi W. Post, the city surveyor, be authorized and empowered to take measurements on said improvement, and calculate the quantities of earth filling, and submit the same to the next meeting of the board. This report was received, and the recommendation and resolutions offered were adopted. At the meeting of council March 31st,

1871, the report of measurements made by the city surveyor was received and referred to the special committee. It showed a difference between the calculations of earth filling of 10,593 cubic yards. The whole amount reported by the assessment commissioners was 27,386 cubic yards, and the amount estimated by Mr. Post, 16,793 cubic yards. A counter report was presented May 12th, 1871, by A. L. Du Puget, former city surveyor, adhering to his first measurements, accounting for the discrepancy by shrinkage, inaccurate methods of boring for measurements, &c. July 18th, 1871, at a meeting of council, the commissioners of assessments for Ferry street, presented their assessment map and report as amended.

The report and map were received and referred to a committee. August 1st, 1871, the council passed a resolution reciting that the assessment map and report were returned to the commissioners March 14th, 1871, for correction in certain particulars, and that the commissioners having returned their assessment map and report not corrected as directed, they thereupon resolved, that the assessment for the grading, &c., of Ferry street, from Jefferson street to the western boundary, be and the same is hereby confirmed as originally filed in the clerk's office, on the 5th day of January, 1871, and that the collector of assessments be, and he is hereby directed, to collect the same according to law. The report of the commissioners, which it is said was not corrected as requested, dated July 18th, 1871, reduced the amount of assessment from $41,345.34 to $34,138.06, and re-assessed the lots benefited, making their map, in other particulars, to agree with the change. After the council had rejected the second assessment on August 22d, 1871, the commissioners protested to council against their action, denied that they had not corrected their former assessment as directed, and gave reasons for the change of the amount, because they were satisfied the former measurements were erroneous. A counter statement was made by Mr. Du Puget, the former city surveyor, and the matter ended. The city proceeded to collect the assessments according to the first report. This report had been recommitted to

the assessment commissioners, upon objections made to its correctness by certain property owners, and was afterwards confirmed and acted upon without notice, and the amended report and map, made by direction of the council, was rejected. When the first report was taken from the file and returned to the commissioners for amendment, if it was competent for the council to recall it and confirm it without amendment, which is doubtful, it could only be done by directing it to be again filed and recorded in the assessment book, pursuant to section fifty-two of the charter; and further, the clerk should have given notice of filing, and of a meeting of council to consider the assessments and objections of persons interested. It was irregular, and a surprise to parties, to assent to their objections, order amendments to be made, and afterwards confirm, without amendment and without notice. It was not the final report of the commissioners, for they had made an amended report, reducing the amount of the assessment, and it was confirmed in face of their protest against the action of the city council. This entire proceeding has the appearance of being capricious, and is illegal under the charter. There is also a fact in the case that has not been explained by the papers returned, which may be susceptible of satisfactory explanation, but without it, is fatal to the assessment. It appears that advertisements were published for proposals for this work, and many offers were sent in, varying from $29,950.17, the highest, to $24,455.78, the lowest. The contract was awarded to Dennis Eagan for the lowest sum. The papers show that he received $38,957.09, besides work, amounting to $2388.25, done by property owners. The contractor must be held to his bid—not allowed to underbid others and afterwards receive more. The excess would be an illegal charge against the land owners.

The entire assessment must be set aside, and, under section eight of the supplement to the charter, approved March 15th, 1861, this court will appoint new commissioners to examine into the assessment, and report anew.